UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

PRINCIPAL LIFE INSURANCE
COMPANY,                                             :

                              :          DECISION AND ORDER
                                                    :

                    Plaintiff,                      :

                                                    :          10-CV-3508(WFK)(WDW)

        -against-                                   :

                                                    :

THE LOCKER GROUP,                                   :

                                                    :

                    Defendant.                      :

                                                    :
-------------------------------------------------------X

    Plaintiff Principal Life Insurance Company (the "Plaintiff") moves for summary

judgment against Defendant The Locker Group (the "Defendant"). Plaintiff seeks rescission of

life insurance policy number 4639850 (the "Policy"). For the reasons stated below, this Court

grants the motion for Summary Judgment.

## **BACKGROUND**

    Mr. Jeffrey Locker ("Mr. Locker"), now deceased, and his widow, Lois Locker ("Mrs.

Locker"), were the principals of Defendant. In April 2009, Mr. Locker completed an application

for life insurance on behalf of the Defendant. Pl.'s R. 56.1 Statement of Facts[1], Ex. 1 (the

"Application").

    Mr. Locker represented as follows in Part C of the Application:

> [A]ll statements are true and complete to the best of [his]
> knowledge and belief and were correctly recorded before I signed
> my name below. I understand and agree that the statements in the
> [A]pplication . . . shall be the basis of any insurance issued. I also
> understand that material misrepresentations can mean denial of an

---

[1] Defendant did not submit a response to Plaintiff's Rule 56.1 Statement of Facts. Accordingly, "each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for the purposes of the motion[.]" E.D.N.Y. Local R. Civ. P. 56.1(c).

otherwise valid claim and rescission of the policy during the contestable period.

In Part A of the Application, Mr. Locker stated the Prudential Business Policy No. L8366722 (the "Prudential Policy") would be replaced upon issuance of the coverage applied for in the Application. In Part B of the Application, Mr. Locker represented his primary occupation to be a Professional Business Coach. He stated his annual income from his employment with Defendant to be $400,000. He stated his other income to be $400,000 from the "sale of related coaching products and services." Application, Part B.

Mr. Locker submitted a confidential financial statement in connection with the Application (the "Confidential Financial Statement"). Decl. of Lee Foltz in Supp. of Summ. J. (the "Foltz Decl."), at ¶ 10.   Mr. Locker indicated he was seeking "key person" insurance coverage in the amount of $4,000,000. *Id.* To be considered a "key person" of an employer, the underwriting guidelines of Plaintiff require the employer to be the beneficiary of the policy applied for, and the insured to be, *inter alia*, a five percent owner of the employer, an employee who is paid over $90,000 per year by the employer, or an employee who makes a "significant economic contribution" to the employer.  Pl.'s R. 56.1 Statement of Facts, Ex. 5 (the "Underwriting Guidelines"), at 6.  Mr. Locker identified himself as 50% owner of Defendant. Foltz Decl., at ¶ 10. Mr. Locker stated the net annual income of Defendant as $400,000, equal to the income he represented in the Application to be his annual income from his own employment. *Id.*

Plaintiff granted the Application and issued the Policy effective June 4, 2009.  Pl.'s Rule 56.1 Statement of Facts, Ex. 2.  The Policy has a face amount of $4,000,000.  Policy, at 3.  The Policy contains an incontestability clause stating "with respect to statements made in the

2

[Application], [w]e will not contest [the Policy] after the [Policy] has been in force during the lifetime of the insured for two years from [June 4, 2009]." *Id.* at 13.

Mr. Locker was murdered on July 16, 2009, within the contestable period established by the Policy. Pl.'s R. 56.1 Statement of Facts, Ex. 3; Policy, at 13. Defendant filed a claim against the Policy on July 28, 2009. Decl. of Nancy Ford in Supp. of Summ. J. (the "Ford Decl."), at ¶ 10. Plaintiff obtained Mr. Locker's medical records and tax returns as part of its routine investigation of the claim. *Id.* at ¶ 11; Foltz Decl. at ¶ 19. Mr. Locker's tax returns revealed: (1) his gross income in 2008 was $225,718; (2) his adjusted income in 2008 was $133,395; (3) his gross income averaged $182,052.33 for years 2006 through 2008; and (4) his adjusted income averaged $126,067 for the years 2006 through 2008. *Id.*, ¶¶ 20–22. Mr. Locker's income was thus significantly lower than he represented in the Application. Plaintiff further determined that the Prudential Policy was still active at the time of Mr. Locker's death, although Defendant contends the Prudential Policy was in a grace period preceding cancellation due to Mr. Locker's nonpayment of the Prudential Policy's premiums. Def.'s Mem. Opp'n Summ. J., at 6.

On December 7, 2009, Brenda Sulentic ("Sulentic"), a Senior Technical Analyst in Plaintiff's Individual Claims Department, referred Defendant's claim to Mr. Lee Foltz ("Foltz"), an Assistant Underwriting Director for Plaintiff. Decl. of Brenda Sulentic in Supp. of Summ. J. (the "Sulentic Decl."), at ¶ 1; Foltz Decl., at ¶¶ 1, 4. Mr. Foltz issued a report on December 7, 2009, stating: "Based on the financial information submitted, we would consider maximum income for [Mr. Locker] at $150,000. Based on that, [the] maximum amount we would offer would be $1,500,000. That is assuming the Prudential business coverage in force is being replaced." Pl.'s Rule 56.1 Statement of Facts, Ex. 4 (the "Foltz Report").

On December 14, 2009, Plaintiff sent a letter to counsel for Defendant (1) advising Defendant of the discrepancy between the income Mr. Locker reported on the Application and the income reflected by Mr. Locker's tax documents, and (2) noting the Prudential Policy was still active at the time of Mr. Locker's death despite his representation in the Application that the Policy would replace the Prudential Policy.   Sulentic Decl., Ex. 1 (the "Sulentic Letter"). Plaintiff sought Defendant's assistance in resolving the two inconsistencies. *Id*.   Defendant did not respond to the Sulentic Letter.   Sulentic Decl., at ¶ 7.

Subsequent to the Foltz Report, Plaintiff learned that Locker had been sued by the trustee in a Chapter 11 bankruptcy proceeding in the Middle District of Florida, *Kapila, as Chapter 11 Trustee v. Locker*, 6:09-ap-678 (Jennemann, Bankr. J.).   On May 28, 2009, Locker filed a letter in that action stating "if the trustee . . . pursues the collection of the $196,152.60 or the $121,200.52 he erroneously believes I should have to pay back, I would be forced to declare bankruptcy.   I am severely in Credit Card debt and my business is just paying my family's bills." Pl.'s Rule 56.1 Statement of Facts, Ex. 6.

By letter dated July 22, 2010, Plaintiff informed Defendant the Policy was void due to misrepresentations by Locker in the Application.   Plaintiff filed this action for rescission of the Policy on July 30, 2010.

## ANALYSIS

### I. Standard of Law

Summary judgment is mandated where the moving party "shows that there is no genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law." *Grynberg v. BP, P.L.C.*, No. 11-cv-1727, 2012 WL 1372091, at *1 (2d Cir. April 20, 2012); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).   Because the "mere existence of factual issues—

4

where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment," the court's responsibility is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried[.]" *Quarles v. Gen. Motors Corp. (Motor Holdings Div.),* 758 F.2d 839, 840 (2d Cir. 1985); *Knight,* 804 F.3d at 11.

The moving party bears the initial burden of demonstrating entitlement to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering the motion, this Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Am. Cas. Co. of Reading Pa. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994). However, defeating the motion requires more than "mere conjecture or speculation by the party resisting summary judgment." *Quarles,* 758 F.2d at 840. The non-moving party must "set forth specific facts showing there is a genuine issue for trial." *Anderson,* 477 U.S. at 256.

## II. Summary Judgment Must Be Granted

*a. The Parties' Arguments*

Plaintiff contends Mr. Locker misrepresented his income, net worth, and the existence of additional life insurance in the Application. Plaintiff claims the misrepresentations are material and argues New York law entitles it to rescind the Policy as a result.

Defendant's opposition is threefold. First, Defendant argues Plaintiff does not establish the materiality of Mr. Locker's misrepresentations. Second, Defendant contends Mr. Locker misunderstood the income inquiry in the Application. Third, Defendant argues Plaintiff has failed to exercise its alleged right to rescission in a timely manner.

Because Plaintiff demonstrates Mr. Locker substantially misrepresented his income on the Application, the misrepresentation is material, and because the Defendant fails to raise a single genuine issue of material fact, this Court grants Plaintiff's motion for summary judgment.

*b. Plaintiff Has Demonstrated Entitlement to Judgment as a Matter of Law*

Because jurisdiction in this case is premised on diversity of the parties' citizenship, this Court applies the law of New York. *Krauss v. Manhattan Life Ins. Co. of N.Y.*, 643 F.2d 98, 100 (2d Cir. 1981). New York law defines a misrepresentation as a false "statement of past or present fact, made to the insurer by . . . the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof." N.Y. Ins. Law § 3105(a). An insurer may "avoid any contract of insurance or defeat recovery thereunder" only if a misrepresentation is "material." *Id.* at § 3105(b)(1). A misrepresentation is "material" if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." *Id.*; *Vella v. Equitable Life Assur. Soc. of U.S.*, 887 F.2d 388, 391 (2d Cir. 1989); *Varshaskaya v. Metro. Life Ins. Co.*, 68 A.D.3d 855, 856 (2d Dep't 2009). Even innocent misrepresentations, if material, are sufficient to warrant rescission of a life insurance policy. *Kulikowski v. Roslyn Sav. Bank*, 121 A.D.2d 603, 605 (2d Dep't 1986); *Mut. Ben. Life Ins. Co. v. JMR Elec. Corp.*, 848 F.2d 30, 32 (2d Cir. 1988); *John Hancock Life Ins. Co. v. Perchikov*, 553 F. Supp. 229, 236 (E.D.N.Y. 2008) (Gershon, J.).

Materiality is ordinarily an issue of fact. *Kulikowski*, 121 A.D.2d at 605. However, "where the evidence concerning materiality is substantially uncontradicted, the matter is one of law for the court to determine." *Id.*; *Mut. Ben. Life Ins. Co.*, 848 F.2d at 32. The Court may determine materiality as a matter of law based on "evidence of the insurer's practice with respect to similar risks, as shown by such documents as the insurer's underwriting manuals . . . and by

6

testimony of a qualified employee of the insurer that the insurer would not have issued the particular contract it did had the facts been disclosed." *Cohen v. Mut. Ben. Life Ins.*, 638 F.Supp. 695, 697 (E.D.N.Y 1986) (Bartles, J.), citing *Wittner v. IDS Ins. Co. of N.Y.*, 96 A.D.2d 1053, 1053 (2d Dep't 1983); *Varshavskaya*, 68 A.D.3d at 856, holding the affidavit of an associate chief underwriter and portions of the insurer's underwriting manual showed insurer would not have issued the policy it did had the insured correctly represented his income.

In the Application Mr. Locker represented his annual income from his occupation as $400,000 and his other income as $400,000. Mr. Locker's tax returns demonstrate his gross income in 2008 was $225,718 and averaged $182,052.33 for the years 2006–2008. He represented he understood and agreed "that the statements in the [A]pplication . . . shall be the basis of any insurance issued." Application, Part C. Mr. Locker therefore made a "statement of past or present fact . . . at or before the making of the insurance contract as an inducement to the making thereof." N.Y. Ins. Law. § 3105(b)(1). Plaintiff has demonstrated Mr. Locker misrepresented his income in the Application.

Mr. Locker expressly stated in the Confidential Financial Statement that he was seeking key person insurance coverage in the amount of $4,000,000. The Underwriting Guidelines explain the face value of a key person policy is determined by using a factor of three to ten times the key person's total compensation. Mr. Foltz, an Assistant Underwriting Director of Plaintiff, states Plaintiff determined Mr. Locker was a key person based on information he provided in the Application and the Confidential Financial Statement. Foltz Decl., at ¶ 13. Mr. Foltz states Plaintiff issued the Policy based upon the representations and misrepresentations Mr. Locker made in the Application. Foltz Decl., at ¶ 15. Mr. Foltz states Plaintiff determined the face value of the Policy pursuant to its underwriting guidelines for key person coverage based upon

7

the income Mr. Locker stated in the Application and the Confidential Financial Statement. Foltz Decl., at ¶¶ 10, 14. Specifically, because Mr. Locker's representations concerning his net annual income from Defendant, in conjunction with Defendant's net annual income, indicated Mr. Locker was the sole producer of income for Defendant, the maximum factor of ten times Mr. Locker's income was appropriate. Finally, Mr. Foltz states Plaintiff would not have issued the Policy had Mr. Locker truthfully represented his income. Foltz Decl., at ¶ 22; Pl.'s R. 56.1 Statement of Facts, at Ex. 4. Plaintiff has demonstrated that Mr. Locker's misrepresented income is material as a matter of law. Plaintiff has met its initial burden of demonstrating entitlement to judgment as a matter of law. The Court now turns to the opposition by Defendant.

*c. Defendant Has Not Raised a Genuine Issue of Material Fact*

While Defendant concedes Mr. Locker misrepresented his income in the Application, it contests the materiality of the misrepresentation on the basis that Plaintiff did not verify Mr. Locker's income before issuing the Policy. Def.'s Mem. Opp'n Summ. J., at 3. Alternatively, Defendant contends Mr. Locker misunderstood the income inquiry in the Application. *Id.* at 4–5. Finally, Defendant argues Plaintiff ratified the Policy by untimely seeking rescission. *Id.* at 6-7. This Court finds the arguments by Defendant insufficient to warrant denial of summary judgment for the Plaintiff.

i. Materiality

Defendant argues Plaintiff cannot demonstrate Mr. Locker's misrepresented income was material within the meaning of New York Insurance Law § 3105 because Plaintiff did not require third-party verification of Mr. Locker's income before issuing the Policy. Defendant is mistaken.

In determining materiality, New York law does not inquire whether it would have been prudent for Plaintiff to verify Mr. Locker's stated income, but whether Plaintiff would have issued the Policy had he truthfully disclosed his income. *Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.*, 53 A.D.2d 214, 216 (1st Dep't 1976). Plaintiff has demonstrated it would not have done so. Additionally, while Defendant notes the Underwriting Guidelines advise third-party income verification in certain situations, Defendant does not dispute that the Underwriting Guidelines did not require Plaintiff to verify Mr. Locker's income. Def.'s Mem. Opp'n Summ. J., at 2; Pl.'s Rule 56.1 Statement of Facts, at ¶ 22 (unopposed); Foltz Decl., ¶ 11.

ii. Ambiguity

Defendant contends Mr. Locker misunderstood the income inquiry in the Application. Defendant contends the income inquiry is ambiguous and argues "an answer to an ambiguous question cannot be the basis of a claim of misrepresentation where a reasonable person in the insured's position could have rationally interpreted the question as the insured did." Def.'s Mem. Opp'n Summ. J., at 5.

No part of the relevant inquiry is ambiguous. Question 7 in Part B of the Application asks for Mr. Locker's primary occupation and employer. Mr. Locker responded that he was a "Professional Business Coach" for Defendant. Question 8 asks for Mr. Locker's annual income from his occupation, his other income, and the source of his other income. Mr. Locker responded his annual income from his occupation was $400,000, his other income was $400,000, and the source of his other income was the "sale of related coaching products and services." Each question is clear, and the responses given by Mr. Locker do not indicate otherwise. Rather, the argument by Defendant that Mr. Locker may have misunderstood Questions 7 and 8 in part B of the Application lacks any foundation. The Defendant concedes Mr. Locker misstated his

9

income in the Application. Even innocent misrepresentations, if material, are sufficient to defeat recovery under a life insurance contract. Def.'s Mem. Opp'n Summ. J., at 3; *Kulikowski*, 121 A.D.2d at 605; *Mut. Ben. Life Ins. Co.*, 848 F.2d at 32; *John Hancock Life Ins. Co.*, 553 F. Supp. at 236.

### iii. Timeliness

Defendant argues Plaintiff ratified the Policy by not formally seeking to rescind the Policy until July 22, 2009, seven months after Plaintiff received the Foltz Report and sent the Sulentic Letter notifying Defendant of Mr. Locker's misrepresentations. Defendant cites to a single case, *S.E.C. v. Credit Bancorp, Ltd.*, 147 F. Supp. 2d 238 (S.D.N.Y. 2001) (Sweet, J.), in support of its argument that "the mere delay . . . from the time Plaintiff determined the alleged misrepresentations . . . to its attempt at recision [sic] is enough to defeat Plaintiff's Motion for Summary Judgment." Def.'s Mem. Opp'n Summ. J., at 7.

As an initial matter, Plaintiff argues because Defendant did not affirmatively plead ratification in its answer, Fed. R. Civ. P. 8(c) prohibits it from doing so for the first time in opposition to summary judgment. Ratification is an affirmative defense within the purview of that rule. *Spyder Enters., Inc. v. Ward*, 872 F. Supp. 8, 13 (E.D.N.Y. 1995) (Trager, J.). Nonetheless, even if the defense of ratification was available, this Court would nonetheless grant the motion for summary judgment for the Plaintiff.

Under New York law, if, "subsequent to the discovery of [material misrepresentations], the party later claiming the right to rescind has continued to accept the benefits of the agreement or acted in some other fashion inconsistent with exercise of a right to rescind," that party will be deemed to have waived the misrepresentations and ratified the agreement. *Prudential Ins. Co. of Am. v. BMC Indus., Inc.*, 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986) (Sweet, J.). Ratification

10

requires clearly established intent, and "may not be inferred from doubtful or equivocal language." *Am. Gen. Life Ins. Co. v. Salamon, et al.*, No. 09-cv-5428, 2011 WL 976411, at *4 (E.D.N.Y. March 6, 2011) (Matsumoto, J.), quoting *In re Nigeria Charter Flights Litig.*, 520 F. Supp. 2d 447, 466 (E.D.N.Y. 2007) (Dearie, J.). The requisite intent may be "implied from knowledge of the principal coupled with a failure to timely repudiate." *Am. Gen. Life Ins. Co.*, 2011 WL 976411, at *4. A finding of ratification based on the delay by an insurer in seeking rescission after discovering the grounds therefor is not a penalty for delay, but, rather, a manifestation of the insurer's intent to ratify. *U.S. Life Ins. Co. in City of N.Y. v. Blumenfeld*, 92 A.D.3d 487, 488 (1st Dep't 2012). The pertinent inquiry is "whether a party silently acquiesced in the contract or rather promptly interposed [its] objections upon discovering the basis for the claim of rescission." *Prudential Ins. Co. of Am.*, 630 F. Supp. at 1302.

In *American General Life Ins. Co.*, the court found the plaintiff had acquiesced in the contract by accepting premium payments from and sending "grace" and "lapse" notices to the defendant after discovering the purported basis for rescission. 2011 WL 976411, at *4–5. In *Scheindlin v. Scheindlin*, 88 A.D.2d 930, 931 (2d Dep't 1982), the court found the Defendant could not challenge the validity of a separation agreement on the grounds of duress, having complied with its terms for nearly three years. By contrast, in *Prudential Ins. Co. of America*, the court found the plaintiff did not acquiesce in the contract by accepting premium payments from defendant after the commencement of its lawsuit for rescission because the "formal pleading of a claim of rescission all but eliminates the any subsequent implication of ratification." 630 F. Supp. at 1302. In *S.E.C.*, the court dismissed the affirmative defenses of several third-party defendant insurers seeking rescission of professional malpractice and directors and officers insurance policies. 147 F. Supp. 2d at 238–58. Far from "mere delay," the

11

court found the insurers ratified the policies "based on uncontroverted conduct after the issuing of the Policies." *Id.* at 255. The insurers "retained the premiums, negotiated endorsements, redrafted . . . marketing and business documents, and engaged in annual re-signings" of the policies after discovering the pertinent misrepresentations. *Id.* at 257.

This Court initially notes Mr. Locker represented in the Application he understood "material misrepresentations can mean denial of an otherwise valid claim and rescission of the policy during the contestable period." Application, Part C. Before the expiration of the contestable period established in the Policy, Mr. Locker died, Defendant submitted its claim to Plaintiff, and Plaintiff both conducted its claims investigation and filed this action. The incontestability clause therefore protects the right of Plaintiff to seek the relief it does in this action.

The record before this Court contains no reasonable indication Plaintiff acquiesced in the Policy. Rather, Plaintiff conducted itself in a manner consistent with protecting its right to rescind. After receiving the Foltz Report, Plaintiff promptly interposed its objections to Defendant by notifying Defendant that Mr. Locker appeared to have made misrepresentations on the Application and seeking an explanation. Sulentic Letter, at 2. Plaintiff requested a response from Defendant within 30 days of receiving the Sulentic Letter. *Id.* Plaintiff indicated its review of Defendants claim was ongoing, and a response to the Sulentic Letter would assist Plaintiff in completing its review in a timely fashion. *Id.* Defendant never responded. Sulentic Decl., at ¶ 7. Defendant continued its claims investigation, made its claim determination, and sent formal notice of rescission to Plaintiff by letter dated July 22, 2010. *Id.* at ¶¶ 8, 9; Foltz Decl., at ¶¶ 24, 25; Sulentic Decl., at Ex. 1; Ford Decl., at ¶¶ 14, 15. Indeed, for the Court to make an inference of ratification based on the period of time which elapsed between Plaintiff receiving the Foltz

Report and formally seeking rescission of the Policy, or to see that delay as creating a genuine issue of fact to be tried, would be to ignore the clear and undisputed record in this case. The final argument by Defendant must therefore also fail.

Plaintiff has demonstrated Locker materially misrepresented his income on the Application. Defendant has raised no genuine issue of material fact in opposition to that reality. This Court therefore grants the motion for summary judgment by the Plaintiff in its entirety.


**SO ORDERED**

Dated: Brooklyn, New York
      June 14, 2012

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge